**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ANDREW J. CHAN, SB# 302526
E-Mail: Andrew.Chan@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260

Attorneys for Defendant FITON INC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AVA HOFFMAN, SHANTE PIERRO, DANIELA ZAMOR, Individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

FITON INC,

Defendant.

Case No. 2:24-CV-09105-FMO-PD

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES**

Date: February 20, 2025
Time: 10:00 a.m.
Courtroom: 6D
Judge: Hon. Fernando M. Olguin

Action Filed: October 22, 2024
Trial Date: None Set

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. COMPLAINT BACKGROUND .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 5

A. Hoffman Lacks Standing to Pursue Her CIPA Claims (Causes of Action III and IV) .......... 5

B. Causes of Action I and II Fail Under Fed. R. Civ. P. 12(b)(6) – Plaintiffs Insufficiently Plead FitOn "Disclosed" VPPA PII .......... 9

C. Causes of Action III and IV Fail Under Fed. R. Civ. P. 12(b)(6) – Hoffman Insufficiently Pleads FitOn Violated the CIPA .......... 12

V. MEET AND CONFER EFFORTS PURSUANT TO LOCAL RULE 7-3 .......... 19

VI. CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Byars v. Hot Topic*,
2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ........ 16

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 6

*Cisco Sys. v. Capella Photonics, Inc.*,
2020 U.S. Dist. LEXIS 152315 (N.D. Cal. Aug. 21, 2020) ........ 5, 10

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ........ 8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 879 (9th Cir. 2017) ........ 9

*Esparza v. 23Andme Inc.*,
2024 Cal. Super. LEXIS 31054 ........ 14

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 15

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015) ........ 8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 16

*Green Apple Event Co. v. Liberty Mut. Grp., Inc.*,
2022 U.S. Dist. LEXIS 12794 (C.D. Cal. Jan. 24, 2022) (Olguin, J.) ........ 4, 10

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. March 5, 2024) ........ 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 8

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) ........ 12

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (1994) .................... 6

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015).................... 9, 10

*Jackson v. G.C. Micro Corp.*,
2015 Cal. Super. LEXIS 6077 .................... 13

*James v. Allstate Insurance Company*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .................... 13, 15

*Johnson v. Blue Nile*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021).................... 16

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................... 5, 6, 17

*Licea v. Am. Eagle Outfitters*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023).................... 13, 15, 16

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023).................... 15, 16

*Martin v. Sephora USA, Inc.*,
2023 U.S. Dist. LEXIS 55930 (E.D. Cal. Mar. 30, 2023).................... 13, 14

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .................... 6, 8, 16

*Powell v. Union Pac. R. Co.*,
864 F. Supp. 2d 949 (E.D. Cal. 2012) .................... 15

*Ramos v. Gap, Inc.*,
2024 U.S. Dist. LEXIS 177688 (N.D. Cal. Sep. 30, 2024).................... 15

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .................... 15, 16

*Smith v. Trinity Broad. of Texas, Inc.*,
2024 WL 4394557 (C.D. Cal. Sept. 27, 2024).................... 12

*Torres v. Best Choice Prods., Inc.*,
2024 Cal. Super. LEXIS 43108 .................... 8

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 ........................................ 5, 11, 12

*Transunion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................ 3, 4, 5

*Valenzuela v. Keurig Green Mt., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................ 14

*Warden v. Kahn*
(1979) 99 Cal. App. 3d 805 ........................................ 15

*Weiner v. ARS Nat. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012) ........................................ 19

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................ 13, 15, 16

**Statutes**

18 U.S.C. § 2710(b)(1) ........................................ 9

Cal. Penal Code, § 631(a) ........................................ 12-18

Cal. Penal Code, § 632(a) ........................................ 12-18

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ........................................ 3-9

Fed. R. Civ. P. 12(b)(6) ........................................ 4-5, 9-19

TO THE COURT, PLAINTIFF, AND PLAINTIFF'S ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 20, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Fernando M. Olguin of this Court, located at 350 West 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, Defendant FitOn Inc. ("Defendant" or "FitOn") moves to dismiss Complaint (D.E. 1) Causes of Action 3 and 4 pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff Hoffman lacks standing to bring these causes of action asserted under the California Invasion of Privacy Act ("CIPA"). Defendant also moves to dismiss Causes of Action 1 through 4 pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs Hoffman, Pierro, and Zamor have alleged neither a plausible Video Privacy Protection Act nor CIPA violation.

Accordingly, FitOn respectfully requests an Order: (1) dismissing the Complaint; and (2) granting such other relief as is just and appropriate.

This motion is based on this notice of motion and motion to dismiss, the memorandum of points and authorities filed herewith, the declaration of Andrew Chan, the declaration of Russell Cook, all pleadings, papers, and records on file herein, and such other and further evidence and argument as the Court deems just and proper.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place by telephone on December 20, 2024.

DATED: January 17, 2025

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ Andrew J. Chan*
ANDREW J. CHAN
Attorneys for Defendant FITON INC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Complaint seeks to hold Defendant FitOn Inc. ("FitOn") liable based on implausible privacy violation claims arising from plaintiffs' use of FitOn's fitness app and website. Of plaintiffs' four claims, two fail because the named plaintiff sponsoring those claims does not have standing to pursue them, and all four claims fail because plaintiffs have not sufficiently pled the statutory elements of their claims.

Named plaintiff Hoffman lacks standing to pursue her California Invasion of Privacy Act ("CIPA") claims (Causes of Action III and IV) because she cannot establish an injury-in-fact. She consented to access by service providers, including Amplitude and Braze, to her use of FitOn's app and website and therefore had no expectation of privacy in her communications with FitOn. Nor did the supposed privacy intrusion, involving basic information about her, constitute "highly offensive" conduct.

Moreover, each of the four (4) causes of action in the Complaint should be dismissed with prejudice. Cause of Action I (an alleged violation of the Video Privacy Protection Act ("VPPA") based on FitOn's supposed "disclosures" through the FitOn app to service providers Amplitude and Braze) fails because named plaintiffs (Hoffman and Pierro) have not sufficiently pled how an ordinary person could readily make the necessary connection between their respective identities and the video materials they allegedly requested or obtained from FitOn.

Cause of Action II (an alleged violation of the VPPA based on FitOn's supposed "disclosures" through the FitOn website to Amplitude, Braze and Meta) fails as to Amplitude and Braze "disclosures" for the same connectivity pleading flaw in Cause of Action I and as to Meta "disclosures" because named plaintiff

(Zamor) has failed to plead her Facebook profile is publicly available and contains "PII" as defined by VPPA.

Cause of Action III (an alleged violation of CIPA, Section 631(a) based on supposed wiretapping on the FitOn app by Amplitude and Braze) fails because the conduct did not involve telephone/telegraph lines as required by statute, Amplitude and Braze are data processors solely acting as extensions of FitOn, and because named plaintiff Hoffman consented to the participation of service providers when using the FitOn app and website.

Cause of Action IV (an alleged violation of CIPA, Section 632(a) based on supposed eavesdropping on the FitOn app by Amplitude and Braze) fails for the same reasons as Cause of Action III.

## II. COMPLAINT BACKGROUND[1]

FitOn operates an online fitness community service through a website and mobile app (D.E. 1, ¶¶ 5-6). FitOn users can access fitness and wellness videos through the website and app (*id.*). Named plaintiffs Ava Hoffman ("Hoffman"), Shante Pierro ("Pierro"), and Daniela Zamor ("Zamor" and with Hoffman and Pierro, "Plaintiffs"), at various times, used the FitOn app and/or website and allegedly viewed videos thereon (*see, e.g., id.* ¶¶ 120-145).

In providing FitOn app services, including video material, FitOn employs data processing, service providers Amplitude and Braze (*id. passim*). A "Service Provider" as defined by FitOn's Privacy Policy ("Privacy Policy"), is a "person who processes the data on behalf of the Company" and refers to a person "employed by [FitOn] to facilitate the Service, to provide the Service on behalf of the Company, to perform services related to the Service or to assist the Company in analyzing how the Service is used." *See* Declaration of Russell Cook (dated Jan. 17, 2025) ("Cook

[1] For purposes of this motion only, the complaint allegations are taken as true, subject to exceptions stated herein.

Declaration”) ¶ 2 and Exhibit 1 (Privacy Policy). The Complaint recognizes FitOn employed Amplitude and Braze as service providers (D.E. 1, ¶¶ 47-52).

In using the FitOn app and website, users, including Plaintiffs, acknowledge FitOn: “use[s] Your Personal data to provide and improve the Service. By using the Service, You agree to the collection and use of information in accordance with this Privacy Policy.” *See* Cook Declaration ¶ 2 and Exhibit 1 (Privacy Policy). “Personal Data” is plainly defined in the Privacy Policy: “any information that relates to an identified or identifiable individual.” *Id.* “Service” refers to the FitOn app or FitOn website “or both” (*id.*).

In providing FitOn website services, FitOn placed Meta Pixel onto the FitOn website, although the Meta Pixel is no longer on the website (*id.* ¶ 82). Meta Pixel allows Meta to track website user activity, including URLs viewed (*id.* ¶¶ 107-108). Plaintiffs allege that for Facebook members, Meta Pixel can also track the website activity of specific Facebook members, including video activity (*id.* ¶¶ 77-78).

Plaintiffs assert four causes of action and divide them among the Plaintiffs. Hoffman and Pierro assert a VPPA claim for users of the FitOn app (*id.* ¶¶ 156-164); Zamor asserts a VPPA claim for users of the FitOn website (*id.* ¶¶ 165-173). Hoffman also alleges a CIPA wiretapping claim and CIPA eavesdropping claim for California users of the FitOn app (*id.* ¶¶ 174-193).

None of these claims, as pled, withstand scrutiny.

## III. LEGAL STANDARD

This Court is well familiar with the Fed. R. Civ. P. 12(b)(1) and 12(b)(6) standards. For a plaintiff to have Article III standing, and survive an initial jurisdictional challenge under Rule 12(b)(1), the plaintiff must show, inter alia, that they “suffered an injury in fact that is concrete, particularized, and actual or imminent.” *Transunion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Without an injury caused by the defendant that can be remedied by a court, “there is no case or controversy for the federal court to resolve.” *Id.* (quoting *Casillas* v. *Madison*

*Avenue Assocs., Inc.*, 926 F. 3d 329, 333 (7th Cir. 2019)). Standing is "not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431.

To prevail on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the movant must show the plaintiff has failed to:

> proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do(.)" Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("(T)he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted). However, "(s)pecific facts are not necessary; the (complaint) need only give the defendant(s) fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (internal quotation marks omitted); Twombly, 550 U.S. at 555 (explaining that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations").
>
> In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

*Green Apple Event Co. v. Liberty Mut. Grp., Inc.*, 2022 U.S. Dist. LEXIS 12794, *1-3 (C.D. Cal. Jan. 24, 2022) (Olguin, J.).

In assessing a motion to dismiss, a Court may apply the incorporation by reference doctrine to a document "if the plaintiff refers extensively to the document

or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A court may assume the contents of an incorporated document "are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* at 1003. When matter subject to judicial notice or complaint exhibits "contradict[] allegations in a complaint … the exhibit trumps the allegations." *Cisco Sys. v. Capella Photonics, Inc.*, 2020 U.S. Dist. LEXIS 152315, *7 (N.D. Cal. Aug. 21, 2020). *See id.* ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001))).

**IV. ARGUMENT**

**A. Hoffman Lacks Standing to Pursue Her CIPA Claims (Causes of Action III and IV)**

In Causes of Action III and IV, Hoffman, as the sole, proposed class representative, seeks to hold FitOn liable under CIPA for supposed violations of her privacy rights (*id.* ¶¶ 174-193). To pursue these causes of action, Hoffman first "must demonstrate standing for each claim [she] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (citation omitted). If Hoffman does not have standing, the causes of action cannot proceed, for there must be at "least one plaintiff" with "standing to seek each form of relief requested in the complaint." *Id.*

Hoffman cannot establish, as is her burden, the injury-in-fact element of standing. *TransUnion*, 594 U.S. at 430. "To have Article III standing …, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *Id.* at 417. The existence of a statutory right, such as that provided for by CIPA, does not, in and of itself, satisfy the injury-in-fact/concreteness requirement. *Id.* at 426. Rather, and central to "assessing concreteness, is whether the asserted harm has a "close relationship" to a "harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.*

Here, the traditional harm asserted is to Hoffman's supposed privacy rights in her personal information (*see, e.g.*, D.E. 1, ¶ 4). But the nature of her information examined in the context of the Complaint and documents incorporated by reference therein (or through judicial notice),[2] does not "trigger a protectable privacy interest" conveying standing. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023); *see id.* (courts decide if a "plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." (citation omitted)).

Under California law, generally, a legally protectable privacy interest arises when an individual has a "reasonable expectation of privacy" in their information *and* a third party's access to the information is deemed "highly offensive." *See, e.g.*, *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 646-49 (1994) (analyzing the "sources of the right to privacy" in California).

Hoffman's information (i.e., the information at issue) cannot be considered protected because she consented, when using the FitOn app, to Amplitude and Braze collecting and using her information "in accordance with" the terms of the Privacy Policy. *See* Cook Declaration, ¶ 2 and Exhibit 1 (Privacy Policy). Since she consented to access and usage, it would be illogical to find she was harmed by providers doing what she agreed they could do with her information.

The terms of the Privacy Policy, as disclosed to Hoffman:

- Notified Hoffman that FitOn "may share Your personal information with Service Providers to monitor and analyze the use of our Service …."
- Defined for Hoffman the meaning of the aforementioned "Service

---

[2] FitOn's Privacy Policy, effective April 23, 2020 through the present is incorporated by reference into the Complaint. Plaintiffs rely on it in asserting their claims and quote it in the Complaint. Compl. ¶ 82 n.37; *see Khoja*, 899 F.3d at 1002. This Court may also take judicial notice of the Privacy Policy. The policy appears on a "publicly available website." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) (taking judicial notice of Google privacy policies). *See* Cook Declaration ¶ 2 and Exhibit 1 (Privacy Policy). FitOn concurrently files a request for judicial notice with this motion.

Providers," to include a "person who processes the data on behalf of the Company [i.e., FitOn]" and those employed by FitOn to facilitate, perform, provide, and analyze the services Hoffman received from FitOn.

- Informed Hoffman that her information "may be transferred to" the processors' computers, including locations outside of California.
- Communicated to Hoffman that "Service Providers have access to Your Personal Data only to perform their tasks on Our behalf and are obligated not to disclose or use it for any other purpose."
- Instructed Hoffman that by using the FitOn app (and website) she agreed to the collection and use of her personal information by FitOn and its Service Providers.

*See* Cook Declaration ¶ 2 and Exhibit 1 (Privacy Policy).

The Complaint does not identify acts by Braze or Amplitude by which either used Hoffman's information for purposes other than those specified by FitOn. At most, Plaintiffs contend Amplitude uses machine learning to improve FitOn's services (D.E. 1, ¶ 92), but FitOn service improvement falls within Service Provider data processing activities for which Hoffman gave consent by using the FitOn app. Moreover, FitOn's use of Service Providers like Amplitude and Braze to process and analyze Hoffman's information and direct toward her certain marketing campaigns and advertising (*id.* ¶¶ 94, 102, 122) is wholly disclosed to Hoffman in the Privacy Policy. *See* Cook Declaration ¶ 2 & Exhibit 1 (Privacy Policy) ("We may share Your personal information with Service Providers to monitor and analyze the use of our Service, to advertise … to You …, for payment processing, to contact You.").

Taking the facts alleged as true, Hoffman could not have a reasonable expectation of privacy in information (personal or otherwise) she shared with FitOn. The "relevant question … is whether [Hoffman] would reasonably expect that

[Service Providers like Amplitude and Braze] would have access to [her] individual data." *Hammerling v. Google, LLC*, 2024 WL 937247, *3 (9th Cir. March 5, 2024) (citation omitted). The Privacy Policy answers that question in the affirmative.

And even if Hoffman held a reasonable expectation of privacy in her information (*e.g.*, name, email, height, gender (D.E. 1, ¶ 33)), there is nothing "highly offensive" about Amplitude and/or Braze having access to that information. The Complaint does not allege, for instance, that FitOn intentionally deceived Hoffman about the use or disclosure of her information, which distinguishes this case from those in which entities misled consumers about how their data would be treated. *See, e.g., Davis v. Facebook, Inc.*, 956 F.3d 589, 603 (9th Cir. 2020) (Facebook failed to disclose that its cookies continued to track users after they logged out of Facebook); *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 150 (3d Cir. 2015) (Google overrode cookie blockers and contravened its privacy policy commitments).

The collection and dissemination of such information has become routine commercial activity when it comes to user data. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion" (citing cases)). *See also Torres v. Best Choice Prods., Inc.*, 2024 Cal. Super. LEXIS 43108, *2, *10 (finding disclosure of user's "personal data" including name, address, email address, and telephone number, without notifying user of same, was not highly offensive). Indeed, even the disclosure of far more sensitive information, such as social security numbers, is not highly offensive. *See Hammerling*, 615 F. Supp. 3d at 1090 (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)).

In the absence of a reasonable expectation of privacy and conduct rising to the level of highly offensive, Hoffman cannot show she suffered concrete harm under Article III. *See Noom*, 682 F. Supp. 3d at 864 (conclusory allegations concerning

disclosure of personal information insufficient to convey standing).

### B. Causes of Action I and II Fail Under Fed. R. Civ. P. 12(b)(6) – Plaintiffs Insufficiently Plead FitOn "Disclosed" VPPA PII

#### 1. A VPPA violation consists of three elements, to include proving a connection between a person and the videos the person requested

The VPPA prohibits a video tape service provider from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider …." 18 U.S.C. § 2710(b)(1). For "there to be an actionable VPPA violation, the video provider must have knowingly disclosed: 1) a consumer's identity; 2) the identity of "specific video materials"; and 3) the fact that the person identified "requested or obtained" that material. There are, in other words, three distinct elements here: the consumer's identity; the video material's identity; and the connection between them. The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to **ban the disclosure of information connecting a certain user to certain videos.**" *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095-96 (N.D. Cal. 2015) (citation omitted) (emphasis added).

#### 2. The Ninth Circuit applies an "ordinary person" standard when deciding if disclosures contain VPPA defined PII

In determining if information is VPPA PII, the Ninth Circuit applies an "ordinary person" standard: "'personally identifiable information' means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 879, 985 (9th Cir. 2017) (citation omitted). Thus, the VPPA "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Id.* at 984. Whether disclosed information is PII does not turn on the "recipient's capabilities" but on how ordinary people understand the



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

information. *Id*.

**3. Causes of Action I and II as to Amplitude and Braze fail – FitOn's "disclosures" to them do not involve VPPA PII**

Plaintiff alleges FitOn uses the data processing services of Amplitude and Braze in violation of the VPPA (D.E. 1, ¶¶ 53-59, 157-63). When a FitOn account holder visits the FitOn app or a FitOn website page where video access may be requested/obtained, FitOn allegedly shares with Amplitude and Braze a variety of data points related to the user's video watching activity (*id.* ¶ 58). Plaintiffs also claim that FitOn shares with Amplitude and Braze a user's full name and email address when the user watches a video (*id.* ¶ 55). This latter assertion is a conclusion without factual foundation and belied by Plaintiff's own exhibits/screenshots. The conclusion should not be given weight by this Court. *See Green Apple Event*, 2022 U.S. Dist. LEXIS 12794, at *1-3; *Capella Photonics,* 2020 U.S. Dist. LEXIS 152315 at *7.

The Complaint presents two screenshot exhibits allegedly reflecting FitOn app user activity shared with Braze and Amplitude (D.E. 1, ¶¶ 55, 58). The first screenshot shows the name, email address, and other information for a supposed FitOn user (*id.* ¶ 55). The second screenshot shows information allegedly displayed when a user watches a workout video on FitOn such as the video ID, the video category, and name of the trainer in the video (*id.* ¶ 58). Plaintiffs do not allege the screenshots are two parts of the same disclosure. Accordingly, the screenshots do not demonstrate connectivity between the identity of a FitOn user and any video requested or obtained by that individual.

In other words, Plaintiffs have not sufficiently alleged that when FitOn "discloses" a user's video activity, FitOn *also* identifies the specific user interacting with that video. Without that connection – a connection between user and video that would readily permit an ordinary person to link a specific video to a specific user – there can be no VPPA violation. *See In re Hulu Privacy Litig.*, 86 F. Supp. 3d at

1096 (finding no VPPA violation where entity separately, albeit simultaneously, transmitted user's identity and video material because the separate transmissions would have to be combined to link the user and video).

**4. Cause of Action II as to Meta fails – Zamor insufficiently pleads FitOn "disclosed" her PII**

Cause of Action II, at this stage, rises or falls with Zamor, the sole named plaintiff asserting the claim. *See Town of Chester*, 581 U.S. at 439. Zamor alleges she was a Facebook member, accessed FitOn's app and website, and watched videos on FitOn while logged into her Facebook account (D.E. 1, ¶ 142). She contends that through "systematic processes" her identity and video activity were disclosed to Meta on the FitOn website (*id.* ¶ 144). Zamor does not identify in the Complaint the personal information, if any, she provided to FitOn. At most, the "systematic processes" described in the Complaint contend each Facebook member is assigned a Facebook ID and that the ID can be used to specifically identify the individual (*id.* ¶¶ 76-81). Zamor does not identify in the Complaint the personal information, if any, she provided to Meta or whether the public has access to that information.

A Facebook member can limit those to whom its Facebook profile is accessible or block the public altogether. For instance, when a Facebook member blocks the public from accessing their profile (sometimes called a "private profile"), a person searching for that profile on Facebook will not reach the profile but instead

will receive a message like this:




Thus, even if a Facebook ID is shown in conjunction with a video watched by the individual associated with the ID, it cannot be inferred, without more, that an ordinary person can readily identify the specific person linked to the ID. *See Smith v. Trinity Broad. of Texas, Inc.*, 2024 WL 4394557, *3 (C.D. Cal. Sept. 27, 2024); *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, *4 (C.D. Cal. July 19, 2024). In *Smith*, the court found plaintiff (Smith) had not sufficiently pled her PII had been disclosed in violation of the VPPA because "Smith does not indicate that her profile is public and contains any identifying information or photos." 2024 WL 4394557 at *3. In *Heerde*, the court proclaimed that reliance on a Facebook ID to fulfill the specific person prong of VPPA PII requires a plaintiff to allege: (i) the "person's Facebook profile is publicly accessible and (ii) includes sufficient identifying information." Zamor has done neither in the Complaint. This cause of action as it pertains to Meta must be dismissed under Fed. R. Civ. P. 12(b)(6).

**C. Causes of Action III and IV Fail Under Fed. R. Civ. P. 12(b)(6) – Hoffman Insufficiently Pleads FitOn Violated the CIPA**

Cause of Action III alleges FitOn violated CIPA Section 631(a). Cause of Action IV alleges FitOn violated CIPA, Section 632(a). Hoffman brings these two causes of action; the other named plaintiffs do not.

Under Cal. Penal Code, Section 631(a), liability may exist "for three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire [i.e., eavesdropping], and attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *James v. Allstate Insurance Company*, 2023 WL 8879246, *2 (N.D. Cal. Dec. 22, 2023) (quoting *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)). Liability can attach to an entity that aids or abets any of the three unlawful "patterns of conduct." *Id.* (citing Cal. Penal Code § 631(a)). Thus, there are four possible paths to liability under the act – the four clauses of Section 631(a).

Cal. Penal Code, Section 632(a), "prohibits eavesdropping by means of any electronic amplifying or recording device of a telephone call 'without the consent of all parties' to the communication." *Jackson v. G.C. Micro Corp.*, 2015 Cal. Super. LEXIS 6077, *24 (quoting Cal. Penal Code § 632(a)).

Here, the Complaint does not sufficiently allege FtOn engaged in conduct for which liability might exist pursuant to Section 631(a) or 632(a).

**1. FitOn, as a participant in Hoffman's FitOn communications, cannot be liable under the three patterns of conduct / the first three clauses of Section 631(a)**

The Complaint does not identify the specific pattern of conduct Hoffman believes FitOn violated. However, since FitOn, by definition, participated in Hoffman's communications with FitOn (and Hoffman does not allege to the contrary),[3] FitOn could not have violated the wiretapping or eavesdropping clauses of Section 631(a). *See Martin v. Sephora USA, Inc.*, 2023 U.S. Dist. LEXIS 55930, *23 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 U.S. Dist.

[3] FitOn as the app and website owner, was the intended recipient of Plaintiffs' alleged communications and could not have wiretapped or eavesdropped as a matter of law. *Williams*, 2022 WL 17869275 at *2 (website owner cannot be liable under first three clauses of Section 631(a)); *Am. Eagle*, 659 F.Supp.3d at 1082 (same).

LEXIS 71020 (E.D. Cal. Apr. 24, 2023) ("courts agree that § 631(a)'s first and second clauses apply only to third parties and not to participants of a communication"). Moreover, since a "finding of a violation under the third clause of § 631(a) is contingent on a finding of a violation of the first or second clause of § 631(a)," FitOn cannot be liable based on the third clause. *See Martin*, 2023 U.S. Dist. LEXIS 55930 at *29. Thus, FitOn's only potential exposure under Section 631(a) would be if it aided and abetted a violation by another under one or more of the first three clauses of Section 631(a).

The Complaint, in conclusory fashion, claims Amplitude and Braze engaged in such violations and FitOn aided and abetted that conduct (D.E. 1, ¶¶ 181, 183). The allegations, however, do not withstand scrutiny under Fed. R. Civ. P. 12(b)(6).

2. **Cause of action III, alleging wiretapping by Amplitude and Braze under clause one of Section 631(a), fails because the conduct did not involve telegraph or telephone lines**

A violation of the wiretapping prong of Section 631(a) (sometimes referred to as "clause one" of the section) occurs when a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument …." *Esparza v. 23Andme Inc.*, 2024 Cal. Super. LEXIS 31054, *2 (quoting Cal. Penal Code §631(a)).

Here, Plaintiffs allege FitOn acted through the internet, not through "any telegraph or telephone wire, line, cable or instrument." In the absence of such an allegation, a claim under 631(a) fails. *See Valenzuela v. Keurig Green Mt., Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023) ("Plaintiff fails to state a claim under clause one because Section 631(a)'s plain text does not prohibit the non-telephonic conduct described here"). While the Complaint urges Section 631(a)'s coverage should extend to internet transmissions (*id.* ¶ 177), "courts have consistently interpreted this first clause as applying only to tapping communications over telephones and not



LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

through the internet." *Ramos v. Gap, Inc.*, 2024 U.S. Dist. LEXIS 177688, *8-9 (N.D. Cal. Sep. 30, 2024) (citing cases); *see also James*, 2023 WL 8879246 at *3 (no violation where conduct did not involve telephonic/telegraph lines); *see also Licea v. Am. Eagle Outfitters*, 659 F.Supp.3d 1072, 1104 (C.D. Cal. 2023) (Courts have consistently interpreted this clause [one] as applying only to communications over telephones and not through the internet); *Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1104 (C.D. Cal. 2023) (same); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, *2 (N.D. Cal. Dec. 22, 2022) (determining "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 825-26 (N.D. Cal. 2020) (reasoning first clause "expressly requires that the unauthorized connection be made with any telegraph or telephone wire, line, cable, or instrument").

3. **Cause of action III, alleging wiretapping and eavesdropping by Amplitude and Braze under clauses one and two of Section 631(a), fails because they participated in Hoffman communications as data processor extensions of FitOn**

Section 631(a) applies to third parties and not participants to a communication. *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) (collecting cases). Only a third party secretly can listen to a conversation. *Williams*, 2022 WL 17869275 at *2 ("Parties to a conversation cannot eavesdrop on their own conversation."); *Cinmar*, 2023 WL 2415592 at *7 ("Section 631 contains an exemption from liability for a person who was a 'party' to a communication") (citations omitted). A party to a communication can record it, and is not eavesdropping when it does. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898-99 (1975); *see also Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 811 ("[Section 631] has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").

Further, liability cannot exist under the first three clauses of Section 631(a) for an entity that acts merely as an extension of a party lawfully engaging in a communication. Blaze and Amplitude, as data processor service providers of FitOn are such extensions. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) is instructive. Plaintiffs in *Graham* visited the Noom website to search for diet offerings. *Id.* at 828. Noom used the program of a third-party vendor designed "to capture and analyze data so that [Noom] can see how visitors are using [its] websites." *Id*. Noom "put [the vendor's] code on [its] website[] to capture the data, and then … review the data, which [was] stored in the cloud on [the vendor's] servers." *Id.* Plaintiffs claimed defendants "record[ed] visitor data such as keystrokes, mouse clicks, and page scrolling[,]" and through a "Session Replay" function were able to "playback" any user's interactions on the website. *Id.* The *Graham* plaintiffs claimed this conduct violated CIPA Section 631. *Id.*

The *Noom* court dismissed the claims holding "as a service provider, [the vendor] is an extension of Noom. It provides a tool – like the tape recorder in *Rogers* – that allows Noom to record and analyze its own data in aid of Noom's business. It is not a third-party eavesdropper." *Id.* at 833 (citations omitted); *see also Williams*, 2022 WL 17869275 at *4 (holding third-party vendor "functioned as a recorder, not an eavesdropper"); *see also Cinmar*, 659 F.Supp.3d at 1107-1110 (concluding software used to record website chats is akin to a recording device and does not violate Section 631(a)); *Johnson v. Blue Nile*, 2021 WL 1312771, *2 (N.D. Cal. Apr. 8, 2021) (same); *Am. Eagle*, 659 F.Supp.3d at 1082 (same); *Byars v. Hot Topic*, 2023 WL 2026994, *10 (C.D. Cal. Feb. 14, 2023) (same).

Here, the Complaint alleges FitOn was "required to contract and specifically pay for each service [with Amplitude and Braze], and information about the services' functionality is publicly disclosed by the Third Parties and/or described in the user agreements entered into by FitOn" (D.E. 1, ¶ 118). As part of these contractual dealings, FitOn entered into Data Processing Addendums ("DPAs") with

Amplitude and Braze. The DPAs establish Amplitude and Braze served as extensions of FitOn in providing services to Hoffman and others through the FitOn app and website.[4]

The DPAs specifically provide (1) "Amplitude shall not 'sell' the Personal Data, as such term is defined in the CCPA" (Amplitude DPA ¶ 4); (2) "the parties acknowledge and agree that Customer [FitOn] is the 'Controller' and Amplitude is Customer's 'Processor' as such terms are defined in the GDPR (regardless of whether the GDPR applies)" (*id.* ¶ 6); (3) "Amplitude will ensure that the persons Amplitude authorizes to Process the Personal Data are contractually required to maintain the confidentiality of such data" (*id.* ¶ 7); (4) "Amplitude will comply with the security obligations of the GDPR and other Applicable Law" (*id.* ¶ 8); (5) "Customer [FitOn] is the Controller, Braze is the Processor" (Braze DPA ¶ 2.1); (6) "Braze shall treat Personal Data as Confidential Information and shall only Process Personal Data on behalf of Customer [FitOn] and in accordance with Customer's documented instructions" (*id.* ¶ 2.3); (7) "Braze will Process Personal Data in compliance with applicable Data Protection Laws and Regulations" (*id.* ¶ 2.3); (8) "Braze shall maintain appropriate technical and organizational measures for protection of the security (including protection against Personal Data Breach), confidentiality and integrity of Customer Data" (*id.* ¶ 6.1); and (9) "Braze will retain, use, disclose or otherwise Process Personal Data solely for the Business Purpose … and shall not Sell Personal Data" (*id.* ¶ 11.2). *See* Cook Declaration ¶¶ 3-4 & Exhibits 2 (Amplitude DPA) and 3 (Braze DPA).

Moreover, FitOn's Privacy Policy (which has been in effect and publicly available from April 23, 2020 to the present) further confirms Amplitude and Braze,

[4] The DPAs are incorporated by reference into the Complaint. Plaintiffs rely on the DPAs in asserting their claims and quote them in the Complaint. Compl. ¶ 93 n.46; *see Khoja*, 899 F.3d at 1002. *See* Cook Declaration Exhibits 2 & 3.

as defined "Service Providers," operate merely as extensions of FitOn:

- "**Service Provider** means any natural or legal person who processes the data on behalf of the Company. It refers to third-party companies or individuals employed by the Company to facilitate the Service, to provide the Service on behalf of the Company, to perform services related to the Service or to assist the Company in analyzing how the Service is used" (Privacy Policy, p. 3).
- "We may share your personal information in the following situations: **With Service Providers**: We may share Your personal information with Service Providers to monitor and analyze the use of our Service, to advertise on third party websites to You are You visited our Service, for payment processing, to contact You" (*id.* p. 7).
- "Service Providers have access to Your Personal Data only to perform their tasks on Our behalf and are obligated not to disclose or use it for any other purposes" (*id.* p. 10).
- "We may use third-party Service providers to monitor and analyze the use of our Service" (*id.* p. 10).
- "We may use Email Marketing Service Providers to manage and send emails to You" (*id.* p. 11).
- "We may use third-party Service Providers to provide better improvement of our Service" (*id.* p. 13).
- "We do not sell personal information" (*id.* p. 18).

Blaze and Amplitude, as FitOn extensions, cannot "eavesdrop" on Hoffman's or other user's communications with FitOn as a matter of law.[5]

[5] For the same reasons, Amplitude and Braze could not have eavesdropped under Section 632(a).

#### 4. Causes of Action III and IV Fail Because Hoffman Consented to Amplitude and Braze Accessing Her Personal Information

Hoffman alleges FitOn violated both Cal. Penal Code 631(a) and 632(a) (D.E. 1, ¶¶ 175-192). A violation of section 632(a), among other elements, requires that "all parties did not consent." *See Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012) (citing *Flanagan v. Flanagan*, 27 Cal.4th 766, 774–76, 41 P.3d 575 (2002)). The second clause of Cal. Penal Code 631(a), which also focuses on eavesdropping, similarly requires action without consent before liability can attach (i.e., a person acts, "willfully and without the consent of all parties to the communication"). *See* Cal. Penal Code § 631(a).

Here, as discussed *supra*, Hoffman consented (as did other FitOn users) to FitOn's use of, and Amplitude and Braze's access to, her personal information pursuant to FitOn's Privacy Policy. *See* Cook Declaration ¶ 2 & Exhibit 1 (Privacy Policy). Accordingly, Hoffman fails to state a CIPA claim against FitOn under either Cal. Penal Code 631(a) clause two (eavesdropping) or Cal. Penal Code 632(a).

## V. MEET AND CONFER EFFORTS PURSUANT TO LOCAL RULE 7-3

On December 20, 2024, Defendant's counsel and Plaintiff's counsel met and conferred via telephone regarding this motion pursuant to L.R. 7-3. Counsel thereafter exchanged emails on January 10, 2025 confirming the parties had met and conferred and Defendant would proceed with this Motion. *See* Declaration of Andrew J. Chan (dated January 17, 2025) ¶¶ 2-4.

## VI. CONCLUSION

For the reasons above, the Court should dismiss the Complaint with prejudice.

DATED: January 17, 2025

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ Andrew J. Chan*
ANDREW J. CHAN
Attorneys for Defendant FITON INC

**FEDERAL COURT PROOF OF SERVICE**
*Hoffman v. FitOn Inc.*
Case No. 2:24-CV-09105-FMO-PD

STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2185 N. California Blvd, Suite 300, Walnut Creek, CA 94596. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On January 17, 2025, I served the following document(s):

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 17, 2025, at Walnut Creek, California.

*/s/ Andrew J. Chan*
Andrew J. Chan

**SERVICE LIST**
*Hoffman v. FitOn Inc.*
Case No. 2:24-CV-09105-FMO-PD

L. Timothy Fisher
Joshua R. Wilner
**BURSOR & FISHER, P.A.**
1990 North Carolina Blvd., 9th Floor
Walnut Creek, CA 94596
T: (925) 300-4455 / F: (925) 407-2700
ltfisher@bursor.com
jwilner@bursor.com

Attorneys for Plaintiffs