**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Joshua R. Wilner (SBN 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**LAW OFFICES OF ROBERT G. LOEWY, P.C.**
Robert G. Loewy (SBN 179868)
20 Enterprise, Suite 310
Aliso Viejo, CA 92656
Telephone: (949) 468-7150
E-mail: rloewy@rloewy.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AVA HOFFMAN, SHANTE PIERRO and DANIELA ZAMOR, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FITON, INC.,

Defendant.

Case No. 2:24-cv-9105-FMO-PD

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Date: April 10, 2025
Time: 10:00 a.m.
Courtroom: 6D
Judge: Hon. Fernando M. Olguin

# TABLE OF CONTENTS


**PAGE**

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. DEFENDANT'S VIOLATION OF THE CIPA CAUSED PLAINTIFF HOFFMAN A CONCRETE INJURY ........ 3

II. PLAINTIFFS HOFFMAN AND PIERRO PLAUSIBLY ALLEGE A VIOLATION OF THE VPPA FOR APP USERS ........ 6

III. PLAINTIFF ZAMOR PLAUSIBLY ALLEGES A VIOLATION OF THE VPPA FOR WEBSITE USERS ........ 8

IV. PLAINTIFF HOFFMAN PLAUSIBLY ALLEGES A VIOLATION OF CIPA §§ 631-632 ........ 11

A. Amplitude And Braze Were Third Parties To Plaintiff Hoffman's Communications With The App ........ 11

1. Amplitude And Braze Are Third-Party Wiretappers Under The "Capability" Approach, Which The Court Should Adopt ........ 12

2. Amplitude And Braze Are Third-Party Wiretappers Under The "Extension" Approach, Which The Court Should Not Adopt ........ 15

3. Defendant's Argument Has No Bearing On The "Recording" Of Communications For CIPA § 632 ........ 19

B. Defendant Has Not Met Its Burden To Show Plaintiff Hoffman Consented To The Wiretapping ........ 20

CONCLUSION ........ 21

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ....................19, 22, 24

*Balletto v. Am. Honda Motor Co.*,
2024 WL 589090 (N.D. Cal. Feb. 13, 2024) ....................19

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................6, 28

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....................23

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....................28

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................19, 28

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024)....................3, 7, 28

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) ....................5, 8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................2, 11, 12

*Feldman v. Star Trib. Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023) ....................14

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023)....................6

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sept. 5, 2023)....................18

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ....................3, 14

*Gladstone v. Amazon Web Servs.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........................................ 19, 22, 24, 28

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................ 23

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................ 8

*Heerde v. Learfield Communications, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........................................................ 8

*In re Facebook Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ........................................................ 4, 5, 14

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........................................ 11, 12, 13

*In re Hulu Privacy Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........................................ 11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................ 9

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ........................................................ 3, 10

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........................................................ 29

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........................................ 6

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........................................................ 6, 7

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................ passim

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ........................................ 29

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ........................................ 23

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023)....................4

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006)....................27

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)....................23

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021)....................28

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)....................27

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)....................26

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)....................28

*Phillips v. U.S. Customs and Border Protection*,
74 F.4th 986 (9th Cir. 2023)....................9

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024)....................21, 28

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....................2, 4, 25, 26

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)....................1

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)....................17, 26

*Sellers v. Bleacher Rep., Inc.*,
2023 WL 4850180 (N.D. Cal. July 28, 2023)....................14

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024)....................26

*Strehl v. Guitar Center, Inc.*,
2023 WL 9700041 (C.D. Cal. Nov. 3, 2023)....................29

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) .......... 22

*Tate v. VITAS Healthcare Corp.*,
2025 WL 50447 (E.D. Cal. Jan. 8, 2025) .......... passim

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... passim

*United States ex rel. Giles v. Sardie*,
191 F. Supp. 2d 1117 (C.D. Cal. 2000) .......... 27, 29

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 17, 22, 24, 26

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 19, 24

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 23

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .......... 22

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .......... 23

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 5, 19, 24

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 21

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 21

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......... 7, 28

**STATUTES**

Cal. Penal Code § 632 .......... 26, 27

**RULES**

Fed. R. Civ. P. 8 .......... 15, 16

Fed. R. Civ. P. 8(d)(2) .......... 27

Fed. R. Civ. P. 8(d)(3) .......... 27

## INTRODUCTION

Defendant had the ability to determine what information was collected by or disclosed to Amplitude, Braze, and Meta, the third parties at issue in this litigation. *See*, *e.g.*, FAC ¶¶ 78, 81-82, 108. Thus, Defendant could have chosen for that information to not identify its users. Instead, Defendant put its pecuniary interests first and enabled these third parties to collect as much explicit PII as possible: App[1] users' *full names*, the *full titles* of the videos they watched, and even *biological characteristics* like height and weight:

**Summary of Third-Party Exfiltration**

| THIRD PARTY | VIDEO INFO | HEALTH INFO | PERSONAL INFO | OTHER INFO |
|---|---|---|---|---|
| **Amplitude** | Video Title, Video ID, Video Events | Height, Weight, Fitness Goals | Email, Birth Year, Gender, Full Name, Username, City (estimated) | UserID, AAID |
| **Braze** | Video Title, Video ID, Video Events | Height, Weight, Fitness Goals | Email, Birthdate, Gender, Full Name, City (estimated) | UserID |

**Summary of Third-Party Exfiltration**

| THIRD PARTY | VIDEO INFO | HEALTH INFO | PERSONAL INFO | OTHER INFO |
|---|---|---|---|---|
| **Amplitude** | Video Title, Video ID, Video Events | Height, Weight, Fitness Goals | Email, Birth Year, Gender, Full Name, Username, City (estimated) | UserID, DeviceID/IDFV |
| **Braze** | Video Title, Video ID, Video Events | Height, Weight, Fitness Goals | Email, Birthdate, Gender, Full Name, Username, City (estimated) | UserID, DeviceID/IDFV |

FAC ¶¶ 44-46. The same is true of Defendant's disclosures to Meta. *Id.* ¶ 83; *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015) ("[a] Facebook ID … is [] equivalent to a name.").

These disclosures were not for some innocuous purpose. Amplitude, Braze, and Meta create comprehensive profiles that encompass a user's activity from multiple

[1] All capitalized terms not otherwise defined herein shall have the same meaning as in the FAC (ECF No. 21).

sources. FAC ¶¶ 93-99, 103-107, 117-122. Those profiles are then used for targeted marketing and advertising, including through disclosure to *even further third parties*. *Id.*; *see also id.* ¶¶ 101, 109, 123-125. Defendant is enriched through this process because its users become more valuable to advertisers when users' very revealing PII is conglomerated in these profiles. *See id.* ¶¶ 102, 110, 122. But it also benefits the third parties, who have the capability to use the acquired information to improve their own purposes. *Id.* ¶¶ 96-101, 105-109.

Fortunately, at least two statutes stand in Defendant's way: the Video Privacy Protection Act ("VPPA") and the California Invasion of Privacy Act ("CIPA"). Both statutes were enacted to ensure consumers get to decide who does and does not get to know information about them. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (the VPPA "protects privacy interests … by ensuring that consumers retain control over their personal information"); *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (the CIPA protects "the right to control the nature and extent of the firsthand dissemination of [one's] statements"). That control was lost when Defendant enabled Amplitude, Braze, and Meta to collect Plaintiffs' and Class Members' PII.

Defendant's interpretation of both statutes is at odds with the text and relevant caselaw. The information Defendant discloses to the third parties here is PII under the VPPA because it "would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). Defendant cannot enable third parties to collect PII solely because those third parties are benefitting Defendant through that collection. *See*, *e.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). And Defendant cannot claim a privacy policy buried somewhere on its App *that it has presented no evidence users were on notice of* provides consent to any wiretapping. *See*, *e.g.*, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1197 (S.D. Cal. 2024).

## ARGUMENT

### I. DEFENDANT'S VIOLATION OF THE CIPA CAUSED PLAINTIFF HOFFMAN A CONCRETE INJURY

Defendant does *not* move to dismiss Plaintiff Hoffman's VPPA claim for lack of Article III standing. Yet, even though Plaintiff Hoffman's CIPA claims are based on the *exact same factual allegations*, Defendant seeks to dismiss the CIPA claims for lack of Article III standing. *See* MTD at 6:14-15. The Court should not do so.

"[T]he relevant law is settled" that when a wiretapping statute like CIPA that "codifies such substantive privacy rights" is violated, such a violation "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co*., 85 F.4th 570, 574 (9th Cir. 2023); *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ("[T]hese statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.").

The specific privacy right the CIPA codifies is an "individual's" right to "control [] information concerning his or her person." *In re Facebook*, 956 F.3d at 598; *Ribas*, 38 Cal. 3d at 361 ("[S]ecret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements."). This right is recognized by "both the common law and the literal understandings of privacy." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64 (1989); *In re Facebook*, 956 F.3d at 598 ("[T]he legislative history and statutory text demonstrate that … the California legislature intended to protect these historical privacy rights when they passed the … CIPA.").

Here, Plaintiff Hoffman alleges that her personally identifiable information, including her name and e-mail address, certain biological characteristics, and her video-viewing information were disclosed to Amplitude and Braze—as enabled by Defendant—without her knowledge or consent, and were used by those third parties to build a comprehensive profile of her for marketing and advertising purposes. FAC

¶¶ 44-46, 66, 93-110, 134-137. "These allegations give rise to a concrete injury because [Amplitude and Braze's] collection of those communications necessarily deprived Plaintiff [Hoffman] of [her] control of [her] information." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 970 (N.D. Cal. 2023); *see also*, *e.g.*, *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) (standing alleged where the "information intercepted by Oracle included information about, *e.g.*, specific web pages viewed, search terms entered, and purchase behavior"); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *2 (S.D. Cal. July 13, 2023) ("[A]llegations that Defendant secretly intercepted and recorded Plaintiff's chat messages without informing her and without her consent" is "a sufficiently concrete and particularized injury.").

Defendant contends Plaintiff Hoffman had no reasonable expectation of privacy in her personal or video-viewing information. *See* MTD at 8:20-21. On the contrary, and to the extent required, Plaintiff Hoffman has a reasonable expectation of privacy in her name "email address … height, weight … and other PII" that were "intercepted in real time and disclosed to" Amplitude and Braze "without h[er] consent." *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *5 (N.D. Cal. Dec. 22, 2023); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose … the particular document within a website that a person views."). And Plaintiff Hoffman's video-viewing information is confidential because it is protected by the VPPA. *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024).

Defendant also contends Plaintiff Hoffman must show it was "highly offensive" for Amplitude and Braze to intercept this information. MTD at 8:28-9:1. No such requirement exists for CIPA, which focuses on the individual's right to control personal information. *James*, 701 F. Supp. 3d at 949 ("[T]he Court rejects Disney's argument that Plaintiffs must show that any interception of information was highly offensive in order to have standing."); *FCA*, 726 F. Supp. 3d at 1192 (standing inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for

their asserted injury but does not require an exact duplicate in American history and tradition") (cleaned up).

Indeed, "[t]he question of the statutory meaning of privacy under the [CIPA] is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 762 n.13. Notwithstanding this, Amplitude and Braze's interception of personal information and video information "and feeding to the tracking entities may constitute a highly offensive intrusion, and, thus, raises a question that cannot be resolved on a motion to dismiss as a matter of law." *Heerde v. Learfield Communications, LLC*, 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024).

Defendant's authorities are also inapposite. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022), by contrast, involved "[a] claim for intrusion upon seclusion under California common law," which, unlike CIPA, does require a showing of "highly offensive" behavior. Still, that case is distinguishable because "the data at issue in *Hammerling* involved usage and engagement data—*i.e.*, the average number of days that users were active on particular apps and a user's total time spent on non-Google apps. *Hammerling* explicitly noted that the plaintiffs did not allege that Google can read the specific information (i.e., content) that a user inputs." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 801 n.13 (N.D. Cal. 2022) (cleaned up). And in *Phillips v. U.S. Customs and Border Protection*, 74 F.4th 986, 989 (9th Cir. 2023), the data was gathered from "information available to the public" and the government only *retained* the information. There were no allegations of the surreptitious interception of private information by third parties, as here.

Last, Defendant avers there is no injury because Plaintiff Hoffman consented to the wiretapping. She did not, as set forth below. Argument § IV.B, *infra*.

## II. PLAINTIFFS HOFFMAN AND PIERRO PLAUSIBLY ALLEGE A VIOLATION OF THE VPPA FOR APP USERS

Plaintiffs Hoffman and Pierro allege that Defendant discloses to Amplitude and Braze an App users' full name, e-mail address, the title of the videos they watch, and certain biological characteristics like height and weight. FAC ¶¶ 44-46. True, personal information and video information are sent separately. However, they are linked together by unique and persistent identifiers: (i) an Amplitude User ID (and device ID and iOS "identifier for vendors" for iOS users) for disclosures to Amplitude, and (ii) a Braze user ID and device ID for Braze. *Id.* ¶¶ 67-70. This enables even an "ordinary person" to ascertain the identity of a user and the videos they watch. In other words, because Amplitude and Braze know that "User #123" is Timothy Fisher, and Amplitude and Braze know that "User #123" watched a video, Amplitude and Braze therefore know that Timothy Fisher watched a video.

This is not complicated to figure out and is ascertainable from *only* the information that Defendant discloses to Amplitude and Braze. In fact, Defendant is engaging in a well-studied practice known as "ID Bridging," which is the process of "identifying someone by piecing together different bits of information about" a user "to confidently infer that it is the same individual accessing a publisher's site or sites from various devices or browsers."[2] Accordingly, Defendant's disclosures violate the VPPA because they "would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon*, 827 F.3d at 267.

Defendant argues that "if an 'ordinary person' is handed the information provided to Amplitude and Braze when a FitOn user accesses a video … the ordinary person" could not "identify a specific person" because Plaintiffs do not "allege an 'ordinary person' has access to the information a user inputs when creating an account." MTD at 11:27-12:6. This is a distortion of the "ordinary person" standard.

---

[2] Kayleigh Barber, *WTF Is The Difference Between Id Bridging And Id Spoofing?*, DIGIDAY (July 8, 2024), https://digiday.com/media/wtf-is-the-difference-between-id-bridging-and-id-spoofing/.

All the "ordinary person" standard asks is, if Defendant handed a regular person was *the same information as Amplitude and Braze*, could that person figure out who a particular individual is and what videos he or she watched "without regard to its recipient's capabilities." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) ("[T]he statute views disclosure from the perspective of the disclosing party. It looks to what information a video service provider discloses…"). It does not matter whether Defendant handed one half of that information to a person on one piece of paper and the other half to that same person on another sheet of paper; it disclosed all of that information and so all of that information is counted for the purposes of the "ordinary person" analysis. *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1098 (N.D. Cal. 2015) ("Whether the transmission is actionable depends on whether the 'connection' of the two [pieces of information] creates the 'disclosure' of PII that VPPA requires."). "One could not skirt liability under the VPPA, for example, by disclosing a unique identifier and a correlated look-up table." *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *11 (N.D. Cal. Apr. 28, 2014).

Contrast the allegations here with cases where the "ordinary person" standard was *not* met. In *Eichenberger*, for instance, the Ninth Circuit found that a Roku serial number could not "identify an individual unless it is combined with other data in Adobe's possession—*data that ESPN never disclosed and apparently never even possessed*." *Eichenberger*, 876 F.3d at 986 (emphasis added). So in that case, unlike here, an "ordinary person" would not have received the information necessary to identify the individual *from the defendant*. On the other end of the spectrum, in *In re Hulu Privacy Litig.*, 86 F. Supp. 3d at 1096-97, "[t]he user's identity and that of the video material were transmitted separately (albeit simultaneously)" to Facebook, but there was no "known connection between those things." In other words, unlike here, Facebook (and thus, an ordinary person) might know that "User #123" is Timothy

Fisher, and Facebook would know that *someone* watched a video, but there was no other identifier that bridged those two pieces of information together.[3]

However, *In re Hulu* provided a hypothetical that more accurately tracks the allegations of this case and supports that the information disclosed here is PII:

> Let us say that a video-store clerk gives a local reporter a slip of paper showing only someone's name. Weeks later, someone else hands the reporter a list of video titles. There is no obvious connection between the two. In the VPPA's terms, no one has tied a person to specific videos. There is consequently no actionable disclosure of PII.
>
> Unless, that is, *additional evidence reestablishes the link between name and titles*. If extrinsic proof shows that the reporter and video provider had agreed to separate the disclosures in place and time, so that the clerk would hand over only the renter's name, while the video titles would arrive later by a third-party courier—but that both parties understood how the name and titles were related—*that would supply the connection*.

*In re Hulu*, 86 F. Supp. 3d at 1096. To summarize, *Defendant itself* discloses to Amplitude and Braze information that links the identity of an App user with the title of the videos they watched. An "ordinary person" with *only the information* Defendant discloses to Amplitude and Braze could ascertain which videos were watched and by who. That satisfies the "ordinary person" standard.

## III. PLAINTIFF ZAMOR PLAUSIBLY ALLEGES A VIOLATION OF THE VPPA FOR WEBSITE USERS

Plaintiff Zamor alleges that Defendant installed a tracking technology on its website referred to as the Meta Tracking Pixel. FAC ¶ 83. Defendant configured the Meta Tracking Pixel such that, when a Website user navigates to a webpage containing video content, Defendant discloses to Meta via the Meta Tracking Pixel: (i) a unique

[3] Also in *In re Hulu*, 86 F. Supp. 3d at 1097-98, the plaintiffs did not provide any evidence at summary judgment that "Hulu knew that Facebook might combine those discrete things to reconstruct PII." By contrast, Plaintiffs allege here that Amplitude and Braze compile the information they receive from Defendant to build comprehensive user profiles. *See*, *e.g.*, FAC ¶¶ 98-99, 106-107.

and persistent numerical identifier called a "Facebook ID," which Meta and any ordinary person can use to identify the Defendant user in the real world; (ii) the subject matter and specific reference number of the video requested or obtained; and (iii) the fact that the user actually watched the video at issue (*e.g.*, whether the user was browsing or watching the video and if and when the user "played" or "paused" the video). *Id.* ¶¶ 83-84. Between January 2021 and January 2025, Plaintiff Zamor watched at least 80 workout videos on the Website. *Id.* ¶ 152. Each time she did so, Defendant disclosed the information identified above to Meta via the Meta Tracking Pixel. *Id.* ¶ 153.

"Most, if not all, courts to address" identical VPPA claims have concluded that the above allegations are sufficient. *Ghanaat*, 689 F. Supp. 3d at 720 (collecting cases); *see also*, *e.g.*, *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) ("[M]ost district courts that have addressed the use of [the Meta] Pixel specifically reached this same result in the context of Rule 12(b)(6) motions."); *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *4-5 (N.D. Cal. July 28, 2023) (a Facebook ID "is a unique identifier that is enough, on its own, to identify a person" and "[P]laintiff alleges that [the defendant] uses the Facebook pixel to disclose 'the content name of the video the digital subscriber watched,'" which is "enough at the pleading stage").

In its motion to dismiss the initial complaint, Defendant's sole argument was that Plaintiff Zamor did not allege that her Facebook profile was publicly available and contained her name and image. ECF 16 at 17-18. While Plaintiffs do not believe that level of detail is required under Fed. R. Civ. P. 8, Plaintiff Zamor added those facts to the FAC to moot the issue. FAC ¶ 150. Plaintiff Zamor now alleges that, during the time period she watched videos on the Website, she "had a Facebook profile that could be accessed by members of the public and that included her full name and photograph." *Id.*

Because Plaintiff Zamor cured the sole issue identified in Defendant's initial motion to dismiss, Defendant's present Motion pivots to a different argument. In particular, Defendant now argues that the Court should disregard Plaintiff Zamor's factual allegations that her Facebook profile was public during the time period she watched videos on Defendant's platform, because the FAC separately contains an undated screenshot of Plaintiff Zamor's Facebook profile. ECF 33 at 13:27-14:1. As FitOn sees it, the screenshot is the "evidence" Plaintiff Zamor relied on to make the factual allegations regarding her Facebook profile, and because the screenshot is undated, it cannot support the allegations that her Facebook profile was public (i) "during th[e] time" she watched videos on FitOn's platform (FAC ¶ 150) and (ii) "during the relevant time period" (*id.* ¶ 151). This argument is without merit. Plaintiff Zamor's narrative factual allegations regarding the time period her Facebook profile was public (and the information on her profile during that time period) are alleged independently of the screenshot of her profile. *Id.* ¶¶ 150-151.

The screenshot is not the "evidence" that Plaintiff Zamor relies on for her narrative factual allegations, and there is nothing inconsistent between (i) Plaintiff Zamor's allegation that her Facebook profile was public "during th[e] time" she watched videos on FitOn's platform (*id.* ¶ 150), and (ii) the undated screenshot of Facebook Zamor's Facebook profile included in the FAC (*id.* ¶ 151). The fact that Plaintiff Zamor *also* included a screenshot of her Facebook profile *in addition* to her narrative factual allegations does not change the black letter law that Plaintiff Zamor's narrative factual allegations must be accepted as true at the pleading stage. Defendant cites no authority for the proposition that, under Rule 8, a Plaintiff must include a *dated* screenshot of her Facebook profile to state a Meta Tracking Pixel claim under the VPPA (as opposed to pleading narrative factual allegations regarding the content of her Facebook profile during the relevant time period), and the Court should decline to impose such a requirement here.

## IV. PLAINTIFF HOFFMAN PLAUSIBLY ALLEGES A VIOLATION OF CIPA §§ 631-632

### A. Amplitude And Braze Were Third Parties To Plaintiff Hoffman's Communications With The App

Defendant contends that "liability cannot exist under the first three clauses of Section 631(a) for an entity that acts merely as an extension of a party lawfully engaging in a communication. Blaze and Amplitude, as data processor service providers of FitOn are such extensions." MTD at 17:17-20. In other words, Defendant contends it cannot be liable for violating CIPA § 631(a) being there was no third-party interception. Similarly, Defendant contends that "[f]or the same reasons, Amplitude and Braze could not have eavesdropped under Section 632(a)." MTD at 20 n.5.

Some courts in this District have held that software-as-a-service ("SaaS") providers like Amplitude and Braze are third-party wiretappers for the purposes of CIPA § 631 by virtue of the fact that SaaS providers are "separate legal entit[ies] that offer[] 'software-as-a-service' and not merely [] passive device[s]." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021) (finding SaaS provider was a third party to communications between website and its customers); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("[A] plausible inference from Valenzuela's allegations is that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the contents of communications in real time."). If the Court adopts this approach, that ends the inquiry.

More generally though, courts are split into two camps regarding whether a SaaS provider is a third party wiretapper. The better-reasoned approach—the "capability" approach—supports Plaintiff Hoffman's allegations that Amplitude and Braze are third-party wiretappers and that Defendant is thus liable for enabling their wiretapping in violation of CIPA § 631. Defendant's proffered interpretation, meanwhile—the "extension" approach—has no basis in the text, caselaw, and legislative policy behind CIPA § 631 and should be rejected. But even under this

interpretation, Plaintiff Hoffman has sufficiently alleged that Amplitude and Braze are third-party wiretappers.

*1. Amplitude And Braze Are Third-Party Wiretappers Under The "Capability" Approach, Which The Court Should Adopt*

As a "growing number of district courts" have held (*Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024)), an SaaS provider is a "third party" under CIPA § 631(a) if the SaaS provider "ha[s] the *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [that] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Javier*, 649 F. Supp. 3d at 900 (emphasis in original); *see also*, *e.g.*, *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023) (noting "courts have posited that companies like ASI are separate corporate entities more accurately analogized to [an] eavesdropper" because "the alleged capabilities of [web monitoring] software are beyond the ordinary function of a tape recorder") (internal quotations omitted); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023) (adopting "capability" approach); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023) (same); *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *3 (N.D. Cal. Feb. 13, 2024) (same); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024) (same); *Gladstone v. Amazon Web Servs.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024) (same); *Ambriz v. Google, LLC*, 2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025) (same); *Tate v. VITAS Healthcare Corp.*, 2025 WL 50447, at *4 (E.D. Cal. Jan. 8, 2025) (same).

The "capability" approach does not require that the SaaS provider actually use the data for another purpose in the instant action, only that the SaaS provider can. *See Javier*, 649 F. Supp. 3d at 900; *see also Tate*, 2025 WL 50447, at *5 ("[W]hether Invoca actually uses the contents of the call for its own purposes is not legally relevant.").

Applying the "capability" approach, Plaintiff Hoffman's allegations suffice to show Amplitude and Braze are a third-party eavesdropper. As Plaintiff Hoffman alleges, Amplitude and Braze have the capability to use the wiretapped conversations for a number of purposes other than providing them to Defendant, including but not limited to:

**Amplitude**

- Training its "Recommendation Engine" feature using "among other things, a customer's past behaviors and history." FAC ¶ 96.
- "[I]ntegrat[ing] customer information from a variety of sources" and "conglomerate[ing] all of this data into user profiles." *Id.* ¶¶ 97-98.
- "[U]s[ing] techniques such as machine learning in order to improve the Services" using "Customer Data." *Id.* ¶ 100.
- Further "disclos[ing] any information it acquires" to "subprocessors," including "but [] not limited to, Amazon, Datadog, and OpenAI." *Id.* ¶ 101.

**Braze**

- Targeting Defendant's users using "real-time and historical preferences, behaviors, conversion likelihood, and interactions across channels." *Id.* ¶ 105.
- "[I]ntegrat[ing] customer information from a variety of sources" and "conglomerate[ing] all of this data into user profiles." *Id.* ¶¶ 105-107.
- "[E]ngaging third-parties … to … process customer personal data" and "improve performance of the Braze Services," including but not limited to "Amazon and Google." *Id.* ¶ 109; *see also* Cook Decl. Ex. C at 15.

These allegations make clear that Amplitude and Braze have the capability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also*, *e.g.*, *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1355 (S.D. Cal. 2024) ("Because generating heatmaps and fingerprinting unique

browser profiles extends beyond the function of a tape recorder, the party to the communication exception does not prevent Carnival from being held liable…") (cleaned up); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 949 (N.D. Cal. 2024) (finding SaaS was a third party where, among other things, it could "train the AI models that form the basis of some of its services" and "analyze Chat communications to assist with customer service interactions and data analytics"); *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Javier pleads that ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites"); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (finding that "software that allows a third party to capture messages in real time and later perform data analysis" should qualify as a third-party wiretapper); *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *5 (C.D. Cal. Nov. 20, 2023) (same where "Plaintiff also alleges that the Session Replay Providers cross-reference and analyze user activity across all the websites they monitor"); *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) (SaaS provider is a third party eavesdropper based on "allegations that Quantum retains the right to analyze and distribute recorded communications for independent purposes"); *Gladstone*, 739 F. Supp.3 at 854 (same where the provider "has the capability to analyze any data it collects through its Amazon Connect platform").

Defendant does not actually grapple with this prevailing view, but it makes a few arguments that are easily disposed of. Defendant contends that Amplitude's capability to use the wiretapped information to improve its services "falls within Service Provider data processing activities" and is insufficient to make Amplitude a third party because such improves benefit Defendant. *See* MTD at 8:9-12. Court after court has rejected this argument. *See, e.g.*, *Tate*, 2025 WL 50447, at *5 (SaaS provider was a third party where "Invoca's Terms of Service expressly reserve the ability to use 'Client Data, as reasonably necessary for Invoca to provide and enhance its provision of services'"); *Ambriz*, 2025 WL 830450, at *3 (same where "Plaintiffs have

adequately alleged that Google has the capability to use the wiretapped data it collects to improve its AI/ML models") (cleaned up); *Gladstone*, 739 F. Supp. 3d at 854-55 ("Defendant can use the data is collects to improve its own products and services, which shows that it is capable of creating, recoding, and retaining data for purposes other than sending the data back to Capital One.") (cleaned up).

Defendant also cherry picks from Amplitude and Braze's respective Data Processing Addendums (MTD at 18-19), but most of these quotes talk about data security and not whether Amplitude or Braze have the capability to use the communications. The quotes also state neither Amplitude nor Braze "sells" customer data, but this has no relevance to whether that information is *disclosed* or *shared* with other entities, which both Amplitude and Braze admit that they do. FAC ¶¶ 101, 109. At best, these DPAs as contrasted with statements by Amplitude and Braze in other documents and Plaintiffs' allegations create disputes of fact that are not ripe for determination at this stage.

Last, Defendant cites to its Privacy Policy, but Defendant has not shown Plaintiff Hoffman was on notice of or consented to the same. Argument § IV.B, *infra*.

*2. Amplitude And Braze Are Third-Party Wiretappers Under The "Extension" Approach, Which The Court Should Not Adopt*

Defendant's primary argument is that Amplitude and Braze are "'extensions" of Defendant, rather than third party wiretappers. MTD at 17:17-20. This "extension" approach to interpreting CIPA § 631(a) was first postulated by *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), and other cases that have followed it. *See, e.g.*, *Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) (same as to California wiretapping law); *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d 1096, 1109-09 (C.D. Cal. 2023); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D.

Cal. 2023).[4] That approach holds that a SaaS provider is not a third party wiretapper where it does not "intercept[] and use[] the data itself," and instead "provides a tool … that allows [a website or app developer] to record and analyze its own data in aid of [the website or app developer's] business." *Graham*, 533 F. Supp. 3d at 832.

As an initial matter, Plaintiff Hoffman alleges that Amplitude and Braze have the "capability to analyze the data [themselves], "reserve[] the ability to use that data for [their] own purpose[s]," and disclose the data to even further third parties. *Tate*, 2025 WL 50447, at *5. Thus, even under the "extension" approach, Plaintiff Hoffman's allegations are sufficient. *Id.*

Regardless, Defendant ignores that a growing number of courts have rejected the "extension" approach as "based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey*, 688 F. Supp. 3d at 972; *see also*, *e.g.*, *Javier*, 649 F. Supp. 3d at 900 (rejecting "extension" approach); *Gladstone*, 739 F. Supp. 3d at 846 (same); *Turner*, 735 F. Supp. 3d at 1184 (same); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (same); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (same); *Ambriz*, 2025 WL 830450, at *3 (same); *Tate*, 2025 WL 50447, at *4 (same). This Court should do the same.

*First*, the "extension" approach defies the text of CIPA § 631. Specifically, the "extension" approach "interprets the second prong of the statute"—which penalizes "reading" communications—"based on the intentions and usage of the prospective third party." *Javier*, 649 F. Supp. 3d at 900. And "the third prong of the statute already penalizes 'use.'" *Id.* "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id.*; *see also Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 ("The determination

[4] Two of the decisions Defendant cites were issued by the same judge as *Graham* and at around the same time. *Yale v. Clicktale, Inc.*, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021).

… that a violation of the second clause could occur only when the information in the communication was actually used by the vendor, are not based on the actual language of the statute.”).

Further, CIPA § 631(a) penalizes those who “aid[], agree[] with, employ[], or conspire[] with any person” to conduct wiretapping. In other words, CIPA § 631 not only prohibits wiretapping by a third party like Amplitude and Braze, but also prohibits a party to the communication, such as Defendant, from allowing Amplitude and Braze to wiretap *on Defendant's behalf*. The “extension” approach is thus contrary to this plain text as well, as it would exempt an employer who asks his or her employee to conduct wiretapping. And because it is contrary to the text of CIPA § 631, the “extension” approach cannot be adopted.

*Second*, in *Ribas*, the California Supreme Court “did not consider the wife's friend's intentions or the use to which they put the information they obtained.” *Javier*, 649 F. Supp. 3d at 900. “Instead, [*Ribas*] emphasized the privacy concerns at issue with having an unannounced second auditor listening in on the call.” *Id.* (cleaned up). Indeed, *Ribas* went as far as to contemplate liability under CIPA § 631 for an employer who “*request[s] a secretary to secretly transcribe a conversation over an extension*,” even though the secretary would be doing the recording solely for the benefit of his or her employer. *Ribas*, 38 Cal. 3d at 361 (emphasis added).

The “extension” approach, however, would have exempted the friend and the hypothetical secretary, as they were simply wiretapping on behalf of the wife and their employer respectively. But that is not what the California Supreme Court held. *Tate*, 2025 WL 50447, at *4 (“[T]he California Supreme Court never considered the wife's friend's intentions or her use for the information obtained, and so to consider a third party's intent in obtaining data here would similarly be improper.”).

Moreover, the California Supreme Court expressly held CIPA § 631 was enacted to prevent eavesdropping by “an unannounced second auditor, whether that auditor be a person *or mechanical device*.” *Ribas*, 38 Cal. 3d at 360-61 (emphasis

added). Under the "extension" approach, the "mechanical device" auditor would not be an eavesdropper, which also goes against *Ribas*.

*Third*, as Judge Aenlle-Rocha recognized in *Saleh*:

> [The "extension" approach w]ould imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party. The text of section 631(a), however, does not contain any such exception, and indeed, [Defendant] invite[s] an interpretation that would vitiate the statute's protections.

*Saleh*, 562 F. Supp. 3d at 520; *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 980 ("Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation."). In other words, adopting the "extension" approach would undermine CIPA's purpose of preventing the dissemination communications to an unannounced second auditor (*see Ribas*, 38 Cal. 3d at 360-61), as it would allow any third party to escape liability so long as it was acting on behalf of a party. On top of this, the "extension" approach permits innumerable technology companies to possess the communications of Californians simply because they were paid by others to do so, thus costing Californians "the right to control the nature and extent of the firsthand dissemination of [their] statements." *Ribas*, 38 Cal. 3d at 361. This undercuts the purpose of CIPA, which is to be "interpret[ed] … in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Shah v. Fandom, Inc.*, --- F. Supp. 3d ---, 2024 WL 4539577, at *4 (N.D. Cal. Oct. 21, 2024). Given this, the Court must adopt the "capability" approach because "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

### 3. *Defendant's Argument Has No Bearing On The "Recording" Of Communications For CIPA § 632*

Even if Defendant is correct that Amplitude and Braze were parties to the communication (and Defendant is not correct), this does not foreclose Plaintiff Hoffman's CIPA § 632 claim. "Section 632 makes it illegal to either 'eavesdrop upon or record' confidential communications. The third party doctrine applies to 'eavesdropping,' but not 'recording.'" *Turner*, 735 F. Supp. 3d at 1182 n.4 (quoting Cal. Pen. Code § 632). In other words, even if Amplitude and Braze were parties to the communication, they can still be liable for *recording* Plaintiff Hoffman's conversations under CIPA § 632, even if they cannot be liable for *eavesdropping* on them. *Id.*; *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 (2006) ("[T]he terms of section 632 … do[] not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibit[] such a party from secretly or surreptitiously recording the conversation."). Defendant does not argue this point and so concedes it. *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief…").

Similarly, although Defendant was a party to Plaintiff Hoffman's communications, Defendant can still be liable for using Amplitude and Braze to record Plaintiff Hoffman's communications. To wit, Plaintiff Hoffman alleges that Defendant employed Amplitude and Braze to secretly record consumers using an "electronic amplifying or recording device." *See*, *e.g.*, FAC ¶¶ 7, 42-43, 45-46, 49, 52, 197, 200-201. These allegations are sufficient to state a CIPA § 632 recording claim against Defendant. *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (sustaining CIPA § 632 claim and rejecting argument that "M.G.'s allegations show that Google – not Headway – allegedly unlawfully eavesdropped or recorded the communications"); *Tate*, 2025 WL 50447, at *1, *6 (sustaining CIPA § 632 where "the healthcare provider utilized a software to listen to the contents of the call and

produce data about the call's purpose and resolution."). Plaintiffs may plead claims "alternatively" (Fed. R. Civ. P. 8(d)(2)) and "regardless of consistency" (Fed. R. Civ. P. 8(d)(3)).

### B. Defendant Has Not Met Its Burden To Show Plaintiff Hoffman Consented To The Wiretapping

Defendant argues that Plaintiff Hoffman "consented, when using the FitOn app, to Amplitude and Braze collecting and using her information in accordance with the terms of the Privacy Policy." MTD at 7:9-12. Of course, Plaintiff Hoffman alleges she was not on notice of and did not consent to any wiretapping, much less any sort of Privacy Policy. *See*, *e.g.*, FAC ¶¶ 66, 134, 191, 201. Those allegations are sufficient at this stage. *See Turner*, 735 F. Supp. 3d at 1178 (finding a lack of consent where plaintiffs alleged they "did not give their consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap their confidential communications with Chase") (cleaned up); *Gladstone*, 739 F. Supp. 3d at 859 (same where the plaintiff alleged that "Capital One failed to provide notice that her calls would be recorded").

However, "consent is an affirmative defense for which defendant bears the burden of proof." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1148 (9th Cir. 2024) (cleaned up); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023) ("The Court finds, again, that consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.") (cleaned up); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) ("The party seeking to establish consent has the burden of proof."). Defendant has not met that burden.

Defendant's sole argument is that a privacy policy exists somewhere on its App. But "merely having a privacy policy online" is insufficient "to show consent under CIPA." *Cody*, 718 F. Supp. 3d at 1000; *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1197 (S.D. Cal. 2024) ("Privacy policies, however, do not bind users 'where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any

affirmative action to demonstrate assent.'") (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1778-79 (9th Cir. 2014)); *Yoon*, 2024 WL 5264041, at *4 ("It is not sufficient to simply allege that the policies exist and Plaintiffs created and used a Facebook account to prove consent.").

Instead, Defendant must demonstrate users were *on notice of and assented to* that Privacy Policy. *Price*, 712 F. Supp. 3d at 1358 ("Where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.") (cleaned up). To do that, Defendant must submit the design and content of the portion of the App where users were allegedly notified of and assented to the Privacy Policy. Defendant must also show that said consent came *before* any wiretapping. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022).

Defendant has not submitted *anything* regarding the design and content of its App. Under binding Ninth Circuit precedent, Defendant cannot demonstrate Plaintiff Hoffman was on notice of the Privacy Policy and therefore cannot show Plaintiff Hoffman consented to the same. *See*, *e.g.*, *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099-1100 (9th Cir. 2023) (denying motion to compel arbitration where "Amazon did not provide the court with a copy or description of any such notice" and noting "[i]t was Amazon's burden to show assent, not Jackson's to show lack thereof"); *Strehl v. Guitar Center, Inc.*, 2023 WL 9700041, at *6 (C.D. Cal. Nov. 3, 2023) ("[T]he Defendant has the burden to show that, in placing the orders, Plaintiff clicked the second button. Because Defendant has not provided any such evidence, it has not met its burden."). Defendant may not introduce any such evidence on reply. *Sardie*, 191 F. Supp. 2d at 1127.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Dated: March 20, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice Pending*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 20, 2025

By: */s/ L. Timothy Fisher*
L. Timothy Fisher