**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ANDREW J. CHAN, SB# 302526
E-Mail: Andrew.Chan@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260

Attorneys for Defendant FITON INC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AVA HOFFMAN, SHANTE PIERRO, DANIELA ZAMOR, Individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

FITON INC,

Defendant.

Case No. 2:24-CV-09105-FMO-PD

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION (ECF 35) TO MOTION TO DISMISS (ECF 33)**

Date: April 10, 2025
Time: 10:00 a.m.
Courtroom: 6D
Judge: Hon. Fernando M. Olguin

Action Filed: October 22, 2024
Trial Date: None Set

## I. INTRODUCTION

Plaintiffs' opposition (ECF 35, "Opposition") to Defendant's motion to dismiss the AC (ECF 33, "Motion") fails to establish the standing of Plaintiff Ava Hoffman ("Hoffman") to pursue her claims under Causes of Action III and IV. The type of injury alleged for Hoffman does not rise to a concrete injury-in-fact meriting Article III standing. While the California Invasion of Privacy Act ("CIPA") seeks to protect certain privacy rights, it will not convey standing here unless Defendant's conduct has harmed or materially risks harming Hoffman's interest in controlling her personal information. The Hoffman information allegedly disclosed (e.g., name and email address) and the manner disclosed does not sufficiently implicate a privacy interest meriting standing to sue under CIPA.

Shante Pierro's ("Pierro"), and Hoffman's Cause of Action I (alleging a Video Privacy Protection Act ("VPPA") violation involving Amplitude and Braze) fails because, contrary to the assertions in the Opposition, an ordinary person cannot use a data processor's unique ID for an individual to link that individual to his/her video activity on the FitOn platform. Similarly, an ordinary person cannot use a device ID to identify the individual who owns (or uses that device); there is no resource into which an ordinary person can enter a device ID and discover the owner of that ID.

Daniela Zamor ("Zamor" and with Hoffman and Pierro, "Plaintiffs") cannot pursue her Cause of Action II (alleging a VPPA violation involving Meta) because she, despite Plaintiffs' contentions in the Opposition, has not adequately pled PII under the VPPA. Her allegations are impermissibly vague.

In addition, Hoffman fails to sufficiently allege violations of CIPA Sections 631, subd. (a), and 632 (*see* Causes of Action III and IV) because the targeted conduct did not involve telephone/telegraph lines as required by statute, Amplitude and Braze

are not third-party wiretappers under the "Capability" or "Extension" approaches, and FitOn did not aid or abet any third-party wiretapping.

Notably, FitOn entered into Data Processing Addendums ("DPAs")[1] with Amplitude and Braze that require the data processors to only process personal data on behalf of FitOn, not sell the personal data, maintain confidentiality, and comply with relevant privacy laws.

The DPAs specifically provide (1) "Amplitude shall not 'sell' the Personal Data, as such term is defined in the CCPA" (Amplitude DPA ¶ 4); (2) "the parties acknowledge and agree that Customer [FitOn] is the 'Controller' and Amplitude is Customer's 'Processor' as such terms are defined in the GDPR (regardless of whether the GDPR applies)" (*id.* ¶ 6); (3) "Amplitude will ensure that the persons Amplitude authorizes to Process the Personal Data are contractually required to maintain the confidentiality of such data" (*id.* ¶ 7); (4) "Amplitude will comply with the security obligations of the GDPR and other Applicable Law" (*id.* ¶ 8); (5) "Customer [FitOn] is the Controller, Braze is the Processor" (Braze DPA ¶ 2.1); (6) "Braze shall treat Personal Data as Confidential Information and shall only Process Personal Data on behalf of Customer [FitOn] and in accordance with Customer's documented instructions" (*id.* ¶ 2.3); (7) "Braze will Process Personal Data in compliance with applicable Data Protection Laws and Regulations" (*id.* ¶ 2.3); (8) "Braze shall maintain appropriate technical and organizational measures for protection of the security (including protection against Personal Data Breach), confidentiality and integrity of Customer Data" (*id.* ¶ 6.1); and (9) "Braze will retain, use, disclose or otherwise Process Personal Data solely for the Business Purpose … and shall not Sell

[1] The DPAs are incorporated by reference into the AC. Plaintiffs rely on the DPAs in asserting their claims and quote them in the AC. ECF 21, ¶ 100 n. 47; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); Declaration of Russell Cook (ECF 33-3) ("Cook Declaration"), Exhibits 2 & 3.

Personal Data" (*id.* ¶ 11.2). *See* Cook Declaration ¶¶ 3-4 & Exhibits 2 (Amplitude DPA) and 3 (Braze DPA).

Accordingly, the Court should dismiss Plaintiffs' VPPA claims (Counts I and II) and CIPA claims (Counts III and IV).

**II. WITHDRAWAL OF CONSENT ARGUMENTS BECAUSE OF PLAINTIFFS' FAILURE TO ALLEGE RELEVANT FACTS**

In asserting its arguments in reply to the Opposition, FitOn withdraws from the Motion those arguments specifically grounded on the assertion that Plaintiffs agreed and consented to the content of Defendant's Privacy Policy and, as applicable, Terms of Use ("ToU"). Plaintiffs' AC, and now the Opposition, omit relevant facts about the process Plaintiffs used to sign up for the FitOn platform, including consents given during that process. Without those facts, Defendant cannot, at this stage, pursue further its consent arguments.

For example, during the sign-up process and prior to Plaintiffs sharing their information with FitOn (and allegedly Meta, Amplitude, and Braze), the sign-up page informed Plaintiffs that in clicking the sign-up box for the FitOn platform the Plaintiffs were agreeing to the terms of the ToU and Privacy Policy, with links thereto prominently displayed immediately below the sign-up box.

Yet for purposes of the Motion, Defendant cannot introduce these facts because the 12(b)(6) legal standard restricts argument to the four corners of the AC and, possibly here, documents upon which the AC relies and/or for which judicial notice is appropriate. Indeed, Plaintiffs take advantage of the 12(b)(6) standard to press their "no consent" arguments and emphasize "Defendant has not submitted anything regarding the content and design of its App" (Opp'n, 21:14-21:15). This is a hollow truth since under the 12(b)(6) standard Defendant is legally limited in its ability to introduce facts contrary to Plaintiffs' AC allegations. While Defendant has requested the Court to take judicial notice of the Privacy Policy, it cannot otherwise place in

context, at this stage, Plaintiffs' interaction with the Privacy Policy, including consents thereto.

Accordingly, Defendant, solely for purposes of the Motion, withdraws the following grounds for dismissal:

1. Fed. R. Civ. P. 12(b)(1) – Lack of standing for Plaintiff Hoffman to pursue Causes of Action III and IV because she consented to Amplitude and Braze's access to her information. See Opening Br. § 4.A.

2. Fed. R. Civ. P. 12(b)(6) – Plaintiff Hoffman cannot pursue Causes of Action III and IV because she consented to Amplitude and Braze's access to her information. See Opening Br. § 4.C.4.[2]

## III. ARGUMENT

### A. Hoffman Lacks Standing to Pursue Her CIPA Claims (Causes of Action III and IV)

At base, the Opposition argues Plaintiff Hoffman has standing because CIPA provides it. Opp'n at 3-4. But, standing is "not dispensed in gross," and for each claim asserted each plaintiff must show standing to pursue that claim. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Thus, the law does not support Plaintiffs' veiled contention that Hoffman has standing for her two CIPA claims (Causes of Action III and IV) simply because Defendant has not challenged standing on Plaintiffs' VPPA claims. Opp'n at 3.

Hoffman's assertion that she has standing because CIPA addresses an individual's privacy rights (Opp'n at 3-4) erroneously flings to the side Ninth Circuit

[2] This withdrawal applies solely to the Motion. Defendant does not waive any other arguments in the Motion. Defendant preserves all affirmative defenses, other defenses, cross claims, counterclaims, and other claims in litigating this action to the extent the action survives this Motion. Defendant's preservation of rights extends to all arguments, contentions, and defenses relating to Plaintiffs and the putative class's use of the FitOn platform, including but not limited to agreements and consents associated with the ToU and Privacy Policy.

guidance: "for Article III purposes, it is not enough for a plaintiff to allege that a defendant has violated a right created by a statute; we must still ascertain whether the plaintiff suffered a concrete injury-in-fact due to the violation." *Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023). In the context of CIPA, the injury-in-fact analysis entails determining if the conduct alleged "would cause harm or a material risk of harm to [a person's] interest in controlling their personal information." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020).

Plaintiffs argue CIPA codifies "substantive privacy rights" and therefore creates the necessary injury-in-fact. Opp'n at 3. In doing so, Plaintiff relies on *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023), *Ribas v. Clark*, 38 Cal. 3d 355 (1985), and *In re Facebook*, 956 F.3d 589. Yet *Jones* did not involve a CIPA claim nor discuss the seminal decisions on the topic (*TransUnion* and *Spokeo*),[3] *Ribas* dealt with a distinguishable fact pattern involving an individual's privacy interests in "statements" made during a phone call, and *In re Facebook* (at 599) found the plaintiffs had "alleged a clear invasion of the … right to privacy." In reaching that finding, the *Facebook* court noted allegations asserting, "Facebook continued to collect [Plaintiffs'] data after they had logged off the social media platform … no matter how sensitive or personal users' browsing histories were," and "by correlating users' browsing history with users' personal Facebook profiles – profiles that could include a user's employment history and political and religious affiliations – Facebook gained a ***cradle-to-grave profile***" of Plaintiffs. *In re Facebook*, 956 F.3d at 598-99 (emphasis added).

Here, there are no allegations of cradle-to-grave profiling or similar conduct. Rather, Hoffman claims that for a few months (April-June 2024) Defendant shared

[3] *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

the following information about her with Braze and Amplitude: (i) email address, (ii) name, (iii) processor user ID, (iv) device ID, (v) iOS identifier, and (vi) video viewing activity. Compl. ¶¶ 133, 136-37.[4] This is a far cry from the conduct the Ninth Circuit found sufficient in *In re Facebook* to allege harm to a person's interest in controlling their information.

To the extent Hoffman similarly is averring Defendant disclosed her information to Amplitude and Braze without her knowledge (Compl. ¶¶ 128-37), that allegation alone does not implicate a privacy interest sufficient to trigger standing. A court should "examine the nature of the specific information at issue to determine whether privacy interests were implicated at all. Otherwise … any situation in which one loses control of information … would confer standing, regardless of whether private information is exposed. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (addressing standing in the context of a data breach concerning information). Here, Hoffman apparently contends she lost control of her information – her name, email address, ID number found on her device, and video watching activity. Names and email addresses are in the public domain and that information, as shown in the Motion (at 12), was not disclosed with Hoffman's video activity. These forms of generalized disclosure should not be enough to implicate a privacy interest meriting standing for Hoffman's CIPA claims.

### B. Causes of Action I Fails Under Fed. R. Civ. P. 12(b)(6) – Plaintiffs Insufficiently Plead FitOn "Disclosed" VPPA PII to Amplitude and Braze

The Opposition argues that an "ordinary person" is able to ascertain the videos watched by Plaintiffs Hoffman and Pierro because their personal identifiable

[4] Hoffman claims all of this information was disclosed at the moment she watched a video, but as established in the Opening Brief (at 12), it was not.

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

information is linked to Amplitude or Braze user IDs and/or device IDs (Opp'n, 6:1-8:18).

However, the Opposition specifically admits that "personal information and video information are sent separately" (Opposition, 6:4-6:6). Accordingly, as discussed in the Motion, the ordinary person standard bars Cause of Action I as an ordinary person cannot link the respective video viewing history of Plaintiffs Hoffman and Pierro based on user IDs unique to Amplitude and Braze. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985-986 (9th Cir. 2017) (dismissing a plaintiff's VPPA claim where an ordinary person could not use information provided to identify an individual); *In re Hulu Privacy Litig.*, 86 F. Supp. 3d at 1096 (finding no VPPA violation where entity separately, albeit simultaneously, transmitted user's identity and video material because the separate transmissions would have to be combined to link the user and video).

Similarly, a device ID in the hands of an ordinary person is of no utility. Unlike a Facebook ID, which under certain circumstances (but not here) can be linked to an individual through the use of the publicly available Facebook website, an ordinary person cannot type in a device ID into a browser and readily learn the identity of the owner of the device or who was using that device at any given time. The same goes for unique IDs assigned by Amplitude and Braze. An ordinary person cannot "plug in" those IDs into a publicly available source document to learn the identity of the person associated with the ID.

### C. Cause of Action II as to Meta fails – Zamor insufficiently pleads FitOn "disclosed" her PII

The Opposition argues that Plaintiffs' AC sufficiently alleged Plaintiff Zamor's Facebook profile was publicly available and contained her full name and picture to support a VPPA claim (Opposition, 8:2-10:27).

Zamor alleges (1) she was a Facebook member with a public Facebook account that included only her name and photograph (ECF 21, ¶ 150), and (2) the "systematic

processes" described in the AC contend each Facebook member is assigned a Facebook ID and that the ID can be used to specifically identify the individual (*id.* ¶¶ 74-82). This is insufficient for an ordinary person to identify Plaintiff Zamor where the information on the alleged Facebook profile is uncertain. *See, i.e., Smith v. Trinity Broadcasting of Texas, Inc.*, 2024 WL 4394557, *2-3 (C.D. Cal. Sept. 27, 2024). Plaintiffs' conclusory assertions about the accessibility and content of Zamor's Facebook page, particularly in the absence of presumably available detail withheld from her supporting documentation that begs the question of *when* her profile was available, should not be enough to sustain her VPPA allegations.

**D. Causes of Action III and IV Fail Under Fed. R. Civ. P. 12(b)(6) – Hoffman Insufficiently Pleads FitOn Violated the CIPA**

The Opposition argues Amplitude and Braze were third parties to Hoffman's communications and (1) Amplitude and Braze are third-party wiretappers under the "Capability" approach, (2) Amplitude and Braze are Third-Party Wiretappers under the "Extension" approach, and (3) Defendant's argument has no bearing on Hoffman's Section 632 claim (Opposition, 11:4-20:3).[5]

However, as discussed in the Motion, the AC does not sufficiently allege FitOn engaged in conduct for which liability might exist pursuant to Section 631(a) or 632.

In *Rodriguez v. Ford Motor Company*, 722 F.Supp.3d 1104 (S.D. Cal. 2024), a

---

[5] The Opposition does not oppose FitOn's argument that FitOn cannot be directly liable for the first three (of four) clauses of Section 631(a) as FitOn participated in Plaintiff Hoffman's communications with FitOn. *See* Opp'n, 11:1-20:3; Opening Brief (ECF 33), 15:6-15:24.

In addition, Plaintiffs' Opposition does not oppose FitOn's argument that clause one of Section 631(a) fails because the conduct did not involve telegraph or telephone lines. See Opp'n, 11:1-20:3; Opening Brief (ECF 33), 16:1-17:1.

Accordingly, this section of the reply only addresses Plaintiff Hoffman's arguments that FitOn allegedly aided and abetted Amplitude and Braze in violation of Sections 631(a) and 632.

defendant moved to dismiss plaintiff's CIPA claim where a software company did not use defendant's customers' information beyond supplying it back to defendant. The court extensively discussed and applied the "Capability" approach when dismissing the plaintiff's CIPA claim. *Rodriguez*, 722 F.Supp.3d at 1116-1122. The court specifically found that the software chat function "only supports the inference that the LivePerson [software] receives and stores these communications for the benefit of its client, Defendant", and additional allegations regarding the software's "integration" with Meta were conclusory and did not support the plaintiff's CIPA claim. *Rodriguez*, 722 F.Supp.3d at 1122.

Here, as discussed above and in the Motion, FitOn entered into Data Processing Addendums ("DPAs")[6] with Amplitude and Braze, which do not permit the data processors from doing other than confidentially processing data for Defendant and otherwise complying with relevant privacy laws. *See* Cook Declaration ¶¶ 3-4 & Exhibits 2 (Amplitude DPA) and 3 (Braze DPA).

Accordingly, Amplitude and Braze did not use defendant's customers' information beyond supplying it back to FitOn pursuant to the DPAs, and Plaintiffs therefore fail to allege Amplitude and Braze are third-party wiretappers. Nor do Plaintiffs make other than conclusory allegations about Amplitude's and Braze's use of data and there is no such allegation specific to Hoffman. *See* AC ¶¶ 128-37.

As discussed in the Motion (at 17:2-20:10), Plaintiffs similarly fail to allege that Amplitude and Braze are third-party wiretappers under the "Extension" approach pursuant to *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), and as evidenced by the DPAs and FitOn's Privacy Policy.

Moreover, in *Smith v. YETI Coolers, LLC*, 2024 WL 4539578 (N.D. Cal. Oct.

[6] The DPAs are incorporated by reference into the AC. Plaintiffs rely on the DPAs in asserting their claims and quote them in the AC. ECF 21, ¶ 100 n. 47; *see Khoja*, 899 F.3d at 1002. *See* Cook Declaration Exhibits 2 & 3.

21, 2024), the court held that a plaintiff failed to allege defendant's requisite knowledge and intent to support a CIPA claim pursuant to Cal. Pen. Code §§ 631(a) and 632, rejecting plaintiff's conclusory allegations of knowledge and intent. *YETI Coolers*, 2024 WL 4539578 at *4-5. The same logic applies here. In *Yeti Coolers*, the court stated:

> That clause [§ 631(a)'s fourth clause] prohibits a defendant from aiding, agreeing with, or employing a third party "to unlawfully do, or permit, or cause" the third party to act in violation of the wiretapping statute. Cal. Pen. Code § 631(a) (emphasis added). That language indicates that the defendant must be acting with the third party in order to have the third party perform acts that violate the statute. At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts. By its plain terms, that statutory language does not cover, for example, a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute. Such a defendant has not aided, agreed with, or employed the third party to perform acts that violate the wiretapping statute.

*YETI Coolers*, 2024 WL 4539578 at *4-5.

The Court further stated:

> [T]o establish liability [under § 632], Defendant must have knowledge of the other's conduct and must have provided substantial assistance. For the same reasons as stated above, Plaintiff did not plead sufficient facts to support a plausible inference that Defendant had knowledge of Adyen's conduct violating the statute, let alone had an intent or purpose of aiding it substantially. As such, the motion to dismiss this claim is granted.

*YETI Coolers*, 2024 WL 4539578 at *5.

Here, Defendant's DPAs with Amplitude and Braze demonstrate Defendant acted to ensure compliance with law, not to violate it. *See* Cook Declaration ¶¶ 3-4 & Exhibits 2 (Amplitude DPA) and 3 (Braze DPA).

Accordingly, Hoffman fails to state a CIPA claim against FitOn under either Cal. Penal Code 631(a) clause two (eavesdropping) or Cal. Penal Code 632.

## IV. CONCLUSION

For the reasons above, the Court should dismiss Plaintiffs' AC with prejudice.

DATED: March 27, 2025

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ Andrew J. Chan*
ANDREW J. CHAN
Attorneys for Defendant FITON INC

**FEDERAL COURT PROOF OF SERVICE**
*Hoffman v. FitOn Inc.*
Case No. 2:24-CV-09105-FMO-PD

STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2185 N. California Blvd, Suite 300, Walnut Creek, CA 94596. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On March 27, 2025, I served the following document(s):

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION (ECF 35) TO MOTION TO DISMISS (ECF 33)**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on March 27, 2025, at Walnut Creek, California.

*/s/ Andrew J. Chan*
Andrew J. Chan

**SERVICE LIST**
*Hoffman v. FitOn Inc.*
Case No. 2:24-CV-09105-FMO-PD

L. Timothy Fisher
Joshua R. Wilner
Max S. Roberts
**BURSOR & FISHER, P.A.**
1990 North Carolina Blvd., 9th Floor
Walnut Creek, CA 94596
T: (925) 300-4455 / F: (925) 407-2700
ltfisher@bursor.com
jwilner@bursor.com
mroberts@bursor.com

Attorneys for Plaintiffs

Robert G. Loewy
**LAW OFFICES OF ROBERT G. LOEWY, P.C.**
20 Enterprise, Suite 310
Aliso Viejo, California 92656
Tel.: (949) 468-7150
rloewy@rloewy.com

Attorneys for Plaintiffs